# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BEA SULLIVAN-KNOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16-cv-08297 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns Plaintiff Bea Sullivan-Knoff's claims that Defendants City of Chicago ("City") and Mayor Rahm Emanuel are infringing on her constitutional rights by maintaining and enforcing Municipal Code of Chicago § 4-60-140(d) ("Ordinance"), which prohibits nude or semi-nude performances in establishments licensed to sell liquor at retail in the City. Specifically, Sullivan-Knoff brings claims pursuant to 42 U.S.C. § 1983 against the City and Mayor Emanuel alleging that the Ordinance violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, as well as the First Amendment to the United States Constitution. In addition to those federal claims, Sullivan-Knoff further alleges that the Ordinance violates Section 2 and Section 18 of Article I of the Illinois Constitution and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5 *et seq*. Before the Court is Defendants' motion to dismiss Sullivan-Knoff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 15.) As explained below, Defendants' motion is granted in part and denied in part.

# BACKGROUND[1]

The Ordinance prohibits nude or semi-nude performances in establishments licensed to sell liquor at retail in the City. It provides:

> No person licensed under this chapter shall permit any employee, entertainer or patron to engage in any live act, demonstration, dance or exhibition on the licensed premises which exposes to public view:
>
> 1. His or her genitals, pubic hair, buttocks, perineum and anal region or pubic hair region; or
> 2. Any device, costume or covering which gives the appearance of or simulates the genitals, pubic hair, buttocks, perineum, anal region or pubic hair region; or
> 3. Any portion of the female breast at or below the areola thereof.
>
> For purposes of this section, any of the items described in subsections (d)(1) through (d)(3) shall be considered exposed to public view if it is uncovered or is less than completely and opaquely covered.

Municipal Code of Chicago § 4-60-140(d).

Sullivan-Knoff is a 23-year-old queer and transgender woman who holds a Bachelor of Arts degree from Northwestern University in Theatre with a focus on Playwriting and Gender and Sexuality Studies. (Compl. ¶ 10, Dkt. No. 1.) In pursuing a career as an artist, Sullivan-Knoff has performed at various venues across the Chicago area, some of which hold liquor licenses. (*Id.* ¶ 17.) Sullivan-Knoff's performances often involve exposing her body in a public place. (*Id.* ¶ 18.) She does so "to reclaim her body in the face of legislation and discrimination directed against transgender bodies, to make herself vulnerable, and to create an impactful experience for the audience." (*Id.* ¶ 19.)

In one of Sullivan-Knoff's performance pieces, she appears onstage with her body wrapped in a sheet and her head covered by a brown paper bag with "Touch Me" written on all

---

[1] The following facts are drawn from Sullivan-Knoff's Complaint and accepted as true for purposes of Defendants' motion to dismiss. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

four sides. (*Id.* ¶ 21.) Members of the audience are invited to touch Sullivan-Knoff's body, and after a set period, Sullivan-Knoff removes the brown paper bag. (*Id.*) Sullivan-Knoff has been prevented from performing this piece because of the Ordinance. (*Id.* ¶ 24.) In 2015, Sullivan-Knoff wished to perform this act at a festival held at an establishment that holds a liquor license in Chicago, but she did not do so because of the Ordinance. (*Id.* ¶ 25.) In April 2016, Sullivan-Knoff performed the act at an establishment that holds a liquor license issued by the City, but she feared legal repercussions against herself and the establishment. (*Id.* ¶ 23.) Sullivan-Knoff anticipates performing again in the future at the same festival and establishment. (*Id.* ¶ 27.) She remains concerned about the possibility of legal repercussions against her and the establishment due to the Ordinance. (*Id.* ¶¶ 27, 30.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In her Complaint, Sullivan-Knoff asserts three claims pursuant to 42 U.S.C. § 1983: Count I alleges an Equal Protection violation due to the Ordinance's prohibition of the exposure of female breasts but not male breasts; Count II alleges a First Amendment violation on the basis

that the Ordinance is overbroad; and Count III alleges that the Ordinance violates the Due Process Clause because it is vague as to what "female breast" means and because it violates the right to bodily integrity. Sullivan-Knoff also raises three claims under Illinois state law: Counts IV and V allege violations of the Illinois Constitution's due process and equal protection clauses; and Count VI alleges a violation of the IHRA, on the ground that the Ordinance constitutes sex discrimination. Defendants move to dismiss all these claims.[2]

As a preliminary matter, it is not clear from the face of the Complaint that Sullivan-Knoff's performance violates the plain terms of the Ordinance, as the allegations in the Complaint suggest that Sullivan-Knoff is covered by a sheet during the entirety of her performance. Nonetheless, the Court will assume for purposes of Defendants' motion to dismiss that Sullivan-Knoff's performance does involve exposure of nudity as defined by the Ordinance because it is plausible that throughout the course of her performance the relevant parts of Sullivan-Knoff's body are "less than completely and opaquely covered." Municipal Code of Chicago § 4-60-140(d).[3]

---

[2] Sullivan-Knoff has sued Mayor Emanuel in his official capacity but not his individual capacity. (*See* Compl. ¶ 9.) An official-capacity suit is treated as a suit against the entity for which the official-capacity defendant is an agent. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Thus, Sullivan-Knoff's official-capacity claim against Mayor Emanuel is duplicative of her claim against the City.

[3] Sullivan-Knoff is not directly regulated by the statute, as she is the performer and not the establishment licensed by the City. *See* Municipal Code of Chicago § 4-60-140(d) ("***No person licensed under this chapter*** shall permit any employee, entertainer or patron to engage in any live act, demonstration, dance or exhibition on the licensed premises which exposes to public view." (emphasis added)). Neither party addresses Sullivan-Knoff's standing to pursue her claims given that she is not directly regulated by the Ordinance. Nonetheless, the Court determines that Sullivan-Knoff's standing is secure, for a plaintiff may establish a cognizable injury in fact by showing that she has altered or ceased conduct as a reasonable response to the challenged statute. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 184–85 (2000) (granting environmental groups standing to sue a corporation under the Clean Water Act because the defendant corporation's alleged environmental damage deterred members of the plaintiff organizations from using and enjoying certain lands and rivers).

## I. Count I—Equal Protection Clause Claim

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" *Lawrence v. Texas*, 539 U.S. 558, 579 (2003) (quoting *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). The Equal Protection Clause prohibits sex-based discrimination by the government unless there is an "exceedingly persuasive justification" for doing so. *United States v. Virginia*, 518 U.S. 515, 531 (1996). Put another way, the government rationale for distinguishing between males and females must satisfy the intermediate-scrutiny standard of being "substantially related" to an "important governmental interest." *Id.* at 533. The government's justification "must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Id.* And although there are enduring differences between males and females, such differences are not "for denigration of the members of either sex or for artificial constraints on an individual's opportunity." *Id.*

Here, the Ordinance prohibits the exposure of nudity by both females and males in establishments licensed to sell liquor, but it treats females and males differently in that it only prohibits the public exposure of "any portion of the ***female*** breast at or below the areola thereof." *Id.* § 4-60-140(d) (emphasis added). Sullivan-Knoff contends that this differential treatment of females and males violates the Equal Protection Clause. Defendants, on the other hand, proffer that the Ordinance is designed to combat the harmful secondary effects that arise from the combination of sexual nudity and alcohol. (Defs.' Memo. in Supp. of Mot. to Dismiss at 6, 10, Dkt. No. 20.) The differential treatment about which Sullivan-Knoff complains is premised on the notion that female breasts are sexual in nature in a way that male breasts are not. Defendants cite cases that appeal to societal convention in substantiating this proposition. (*Id.* at 4 (citing *Buzzetti*

5

*v. City of N.Y.*, 140 F.3d 134, 143 (2d Cir. 1998) ("[T]he public reactions to the exhibition of the female breast and the male breast are highly different. The male chest is routinely exposed on beaches, in public sporting events and the ballet, and in general consumption magazine photography without involving any sexual suggestion. In contrast, public exposure of the female breast is rare under the conventions of our society, and almost invariably conveys sexual overtones."); *United States v. Biocic*, 928 F.2d 112, 116 (4th Cir. 1991) (noting that "erogenous zones . . . still include (whether justifiably or not in the eyes of all) the female, but not the male, breast").)

This Court, however, heeds the guidance from the United States Supreme Court holding that Defendants may not rely on overbroad generalizations about the nature of females and males, and that any differences identified may not denigrate or artificially constrain either sex. *See Virginia*, 518 U.S. at 533; *see also Craig v. Boren*, 429 U.S. 190, 210 n.23 (1976) (disapproving of the holding in *Goesaert v. Cleary*, 335 U.S. 464 (1948), in which the Supreme Court upheld a Michigan law barring women from bartending because the sight of female bartenders caused "moral and social problems"). Defendants' justification for the Ordinance relies upon the assumption that females have a heightened capacity to arouse sexual desire when exposing their breasts as compared to males—and based on this, the Ordinance limits females in a way that it does not limit males. But Defendants' claim about female and male breasts might in fact be an overbroad generalization about the sexual capacity of males and females. Of course, the Court does not deny that there are differences between female and male breasts—principally, female breasts can nourish children while male breasts cannot. *See* Johns Hopkins Medicine, *Anatomy & Physiology of the Breast*, https://pathology.jhu.edu/breast/basics/overview. Nevertheless, the relevant difference here concerning the heightened sexual nature of female breasts might just be a

6

product of society's sexual objectification of women. *See Free the Nipple—Fort Collins v. City of Fort Collins, Colo.*, No. 16-cv-01308-RBJ, 2017 WL 713918, at *5 (D. Colo. Feb. 22, 2017). Or it could be that the identified difference is rooted in something more fundamental about the nature of females and males that grounds a constitutionally proper justification for the Ordinance.

At this nascent stage of the case (and on the slim record before the Court), the Court cannot say that Defendants' justification withstands the intermediate scrutiny applicable to the sex-based distinction in the Ordinance. Accordingly, Defendants' motion to dismiss must be denied. Instead, both sides will have the opportunity in discovery to explore whether, how, and to what extent the exposure of female breasts—as opposed to male breasts—creates a sexual environment, and whether, how, and to what extent this legitimates the differential treatment of females and males under the Ordinance. *See N. Contracting, Inc. v. State of Ill.*, 2004 WL 422704, at *1, *24 n.34 (N.D. Ill. Mar. 3, 2004) (evaluating whether state program meets intermediate scrutiny after the parties engaged in "lengthy discovery"); *Builders Ass'n of Greater Chi. v. Cty. of Cook*, 123 F. Supp. 2d 1087, 1092–93 (same).

## II.  Count II – First Amendment Claim

Sullivan-Knoff's First Amendment claim is based on the purported overbreadth of the Ordinance. She contends that the Ordinance is invalid—both facially and as applied to her case. Specifically, she argues that the Ordinance's prohibitions on nudity are not properly calibrated to "combating [the] secondary effects" that arise from the combination of nudity and alcohol. Rather, the Ordinance "reaches too far." (Pl.'s Resp. at 16, Dkt. No. 30.) In response, Defendants argue at length that the Ordinance is not overbroad but rather is properly calculated to combat the deleterious aforementioned secondary effects.

"Although [b]eing 'in a state of nudity' is not an inherently expressive condition, nude

dancing . . . is expressive conduct within the outer perimeters of the First Amendment." *Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix, Ill.*, 779 F.3d 706, 711 (7th Cir. 2015) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) (plurality opinion)). While Sullivan-Knoff contends that her own performance does not constitute nude dancing, the Court determines that whatever First Amendment protections extend to nude dancing would also extend to Sullivan-Knoff's performance art involving nudity. In *Ben's Bar, Inc. v. Village of Somerset*, the Seventh Circuit instructed that "a liquor regulation prohibiting the sale or consumption of alcohol on the premises of adult entertainment establishments is constitutional if: (1) the State is regulating pursuant to a legitimate governmental power; (2) the regulation does not completely prohibit adult entertainment; (3) the regulation is aimed not at the suppression of expression, but rather at combating the negative secondary effects caused by adult entertainment establishments; and (4) the regulation is designed to serve a substantial government interest, narrowly tailored, and reasonable alternative avenues of communication remain available, or, alternatively, the regulation furthers an important or substantial government interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest. 316 F.3d 702, 722 (7th Cir. 2003).

Following the contours of the *Ben's Bar* test, Defendants' proffered justification for the Ordinance is the reduction of adverse secondary effects that arise from the combination of alcohol and sexual nudity. (Defs.' Memo. in Supp. of Mot. to Dismiss at 13–14.) But with respect to a public nudity ban, "while the minimization of secondary effects may, in the abstract, satisfy [the] 'substantial governmental interest' requirement [in the Supreme Court's test in *United States v. O'Brien*, 391 U.S. 367 (1968)], [Defendants] must nevertheless offer some evidence that nude

dancing in fact generates such deleterious effects." *Foxxxy Ladyz Adult World*, 779 F.3d at 712.[4] The Seventh Circuit further has explained that "a regulating body produce some specific, tangible evidence establishing a link between the regulated activity and harmful secondary effects." *Id.* at 715. Reliance on prior case law is not enough. *Id.* at 713.

In arguing that they have met this burden in establishing an important or substantial governmental interest justifying the Ordinance and that the Ordinance is no greater than essential to further this interest, Defendants primarily cite the Illinois Supreme Court's decision in *City of Chicago v. Pooh Bah Enterprises, Inc.*, 865 N.E.2d 133 (Ill. 2006), and the evidence referenced therein, including expert testimony. The problem with Defendants' argument is the current stage of the proceedings. This case is before the Court on a motion to dismiss and so, regardless of the merit of Defendants' proffered evidence and case citations, Sullivan-Knoff must have an opportunity to challenge and respond to Defendants' evidence. *Foxxxy Ladyz Adult World*, 779 F.3d at 717 ("To dismiss plaintiffs' claim now, when . . . plaintiffs have therefore not received a full and fair opportunity to challenge [the Village's] findings, would be premature."). Thus, the Court denies Defendants' motion to dismiss Count II as well.

**III.    Count III – Due Process Clause Claim**

As to her Due Process Clause claim, Sullivan-Knoff offers various theories of how her due process rights were violated. Many of her arguments are duplicative of her arguments in support of her First Amendment and Equal Protection claims discussed above. But Sullivan-Knoff also raises two additional, distinct points. First, she contends that the Ordinance is void for reason of vagueness because transgender individuals do not know how the classification of the physical anatomy "female breast" applies to them. (Compl. ¶ 50.) Second, she claims that the Ordinance

---

[4] This guidance is wholly applicable here, as the Seventh Circuit's *Ben's Bar* test is founded upon the *O'Brien* test and indeed explicitly incorporates the same "substantial governmental interest" requirement of *O'Brien*. *Ben's Bar*, 316 F.3d 702, 722 (7th Cir. 2003).

9

"restricts her fundamental right to bodily integrity." (Pl.'s Resp. at 17.) The Court considers each of these arguments in turn.

"The void-for-vagueness doctrine protects against the ills of a law that 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 478–79 (7th Cir. 2012) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (internal quotations omitted)). "The 'vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.'" *Id.* (citing *Fox Television*, 567 U.S. at 253). "In cases where the statute abuts upon sensitive areas of basic First Amendment freedoms, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* (internal quotations omitted). "Even under the heightened standard for the First Amendment, though, the potential chilling effect on protected expression must be both 'real and substantial' to invalidate a statute as void for vagueness in a facial challenge." *Id.* (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).

Here, the Ordinance clearly touches on an area of First Amendment concern, as expressive conduct involving nudity falls within the ambit of the First Amendment. *Foxxxy Ladyz Adult World*, 779 F.3d at 711. Consequently, the Ordinance must rigorously provide guidance to regulated parties (so that they know what is required of them) and to those enforcing the law (so that they do not act in an arbitrary or discriminatory manner). *Madigan*, 697 F.3d at 478–79.[5]

---

[5] Defendants argue that Sullivan-Knoff "must demonstrate that the law is impermissibly vague in all of its applications." (Defs.' Reply at 12, Dkt. No. 34 (citing *Fuller v. Decatur Pub. Sch. Bd. of Educ.*, 251 F.3d 662, 666–67 (7th Cir. 2001))). But this is incorrect. A plaintiff must show that the law is impermissibly vague in all its applications when the law "does not reach constitutionally protected conduct." *Fuller*, 251

Sullivan-Knoff contends that the Ordinance's use of the term "female breast" does not satisfy these obligations. In particular, Sullivan-Knoff observes that transgender individuals, like herself, who wish to perform in establishments serving liquor—and the establishments that are deciding whether to permit them to perform—may not know whether the performers have "female breast[s]" under the law, and relatedly, whether they are perceived by law enforcement to have "female breast[s]." For example, is "a trans man who has not had a medical procedure to remove biological female breasts but is legally a male" bound by the Ordinance? Is a "trans woman who is legally female but does not have biological female breasts" bound by the Ordinance?[6] (Pl.'s Resp. at 17.) At a minimum, these questions pose serious concerns in the abstract, as nothing in the text of the Ordinance provides a clear answer.

Defendants argue that Sullivan-Knoff's void-for-vagueness challenge should fail because "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" (Defs.' Reply at 12, Dkt. No. 34 (citing *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines*, 362 U.S. 17 (1960)))). But this is inapposite—Sullivan-Knoff is not presenting a mere hypothetical to the Court; rather, she is presenting the very scenario she finds herself in as a transgender woman who does not how the Ordinance applies to her. Consequently, the Court denies Defendants' motion to dismiss Sullivan-Knoff's Due Process Clause claim based on vagueness. Again, in reaching this determination, the Court has not

---

F.3d at 666 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)). As explained above, the Ordinance implicates the First Amendment and therefore does reach constitutionally-protected conduct.

[6] Sullivan-Knoff also raises the same concern in the context of her Equal Protection claim. But the Court understands it as more properly raising a Due Process concern. (Pl.'s Resp. at 7 (raising questions of how Ordinance applies to transgender individuals and therefore raising Due Process notice concerns).)

decided the ultimate issue but rather will allow the parties an opportunity to explore through discovery whether the Ordinance is vague.

Sullivan-Knoff also raises a substantive due process claim, alleging that the Ordinance "restricts her fundamental right to bodily integrity." (Pl.'s Resp. at 17.) Specifically, Sullivan-Knoff argues that the Ordinance prevents her from performing a piece about her own gender identity and thereby shocks the conscience.

The Court determines that Sullivan-Knoff has not stated a claim based on a theory of substantive due process. "[T]he Supreme Court has recognized a liberty interest in bodily integrity in only very limited circumstances involving such things as abortions, end-of-life decisions, birth control decisions, and instances where individuals are subject to dangerous or invasive procedures where their personal liberty is being restrained." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal citations omitted). Sullivan-Knoff has not cited any authority for the proposition that limitations on public nudity—like that imposed by the Ordinance—implicate substantive due process rights. The Court cannot, consistent with the Supreme Court's narrow delineation of substantive due process, find by analogy that the Ordinance violates Sullivan-Knoff's right to bodily integrity. The Ordinance does not involve an intrusion into Sullivan-Knoff's private decisions about her body, nor does it involve a direct or indirect invasion into Sullivan-Knoff's body; it simply limits the places of public accommodation where Sullivan-Knoff may appear nude. Thus, insofar as Sullivan-Knoff's Due Process Clause claim is predicated on a restriction of her right to bodily integrity, it is dismissed.

**IV.     Counts IV and V – Claims under the Illinois Constitution**

Sullivan-Knoff concedes that she is only seeking declaratory relief for her claims under the Illinois Constitution. (Pl.'s Resp. at 19) Defendants' arguments for dismissal of Sullivan-

Knoff's claims for violations of the equal protection and due process protections of the Illinois Constitution echo their arguments against Sullivan-Knoff's claims under the Equal Protection and Due Process Clauses of the United States Constitution. As the Court has rejected those arguments with respect to the federal constitutional protections, the Court rejects them as to the state constitutional protections as well.

### V.     Count VI – Claims under the IHRA

Finally, Sullivan-Knoff concedes that she has not administratively exhausted her IHRA claim and so the Court dismisses Count VI. (Pl.'s Resp. at 20.)

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Specifically, the Court denies the motion with respect to Sullivan-Knoff's claims arising under the Equal Protection Clause (Count I) and the First Amendment (Count II). The Court also denies the motion with respect to Sullivan-Knoff's Due Process Clause claim that the Ordinance is void for vagueness (Count III) but grants the motion with respect to her Due Process Clause claim that the Ordinance violates her right to bodily integrity (Count III). With respect to Sullivan-Knoff's claims under the Illinois constitution (Counts IV and V), the Court grants the motion insofar as Sullivan-Knoff seeks anything but declaratory relief but otherwise denies the motion. Finally, as Sullivan-Knoff has voluntarily withdrawn her claim under the IHRA (Count VI), the motion is denied as moot with respect to that claim.

ENTERED:

Dated: November 12, 2018

Andrea R. Wood
United States District Judge